**George T. HUPP, Plaintiff-Appellant,**

**v.**

**Laurence GRAY, an Individual, and A. G. Becker and Company, a corporation, Defendants-Appellees.**

**No. 73-1121.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1974.

Decided Aug. 12, 1974.

Rehearing Denied Sept. 13, 1974.

Jason E. Bellows, Ronald N. Heftman, Chicago, Ill., for plaintiff-appellant.

James T. Griffin, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, and PELL and STEVENS, Circuit Judges.

PELL, Circuit Judge.

Plaintiff-appellant George T. Hupp appeals from the district court's order dismissing plaintiff's complaint and denying plaintiff leave to file a proposed first amended complaint.

Hupp filed his original complaint in September 1971 seeking damages from Laurence Gray, an individual, and A. G. Becker & Company, Incorporated, a corporate broker-dealer. The complaint had four counts, each of which set forth an alternative theory of recovery. Count I was based on section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 of the Securities Exchange Commission (17 C.F.R. § 240.10b–5). Count II was based on the Illinois common law of fraud. Count III was based on section 7 of the Securities Exchange Act of 1934 (15 U.S.C. § 78g) and the Rules of the Board of Governors of the Federal Reserve System promulgated thereunder. Count IV was based on the Illinois common law of negligence.

Both defendants moved, pursuant to Rule 12(b),[1] Fed.R.Civ.P., to dismiss the complaint on the theory that the action was barred by the statute of limitations. Hupp's deposition was submitted by the defendants in support of their motion to dismiss. On the basis of the pleadings and Hupp's deposition, the district court dismissed Counts I and III as time barred. Counts II and IV, being based upon pendent jurisdiction, were dismissed for lack of federal jurisdiction.

Hupp then sought leave to file a first amended complaint which contained three counts, corresponding to Counts I, II, and IV in his original complaint. The district court denied plaintiff leave to file this proposed first amended complaint on the ground that the federal counts of the proposed complaint would also be barred by the statute of limitations and would, therefore, be subject to a motion to dismiss.

The facts, as disclosed in Hupp's complaint and deposition, are as follows. From May 1, 1965, to January 10, 1966, Hupp made a number of purchases of shares of stock in the Variable Annuity Life Insurance Company of America (Valic) through the defendant Gray, a stockbroker in the employ of Becker. Gray allegedly induced Hupp to make these purchases by means of misrepresentations and omissions of material facts concerning Valic. These misrepresentations allegedly included statements indicating that Valic had a commanding lead over the major insurance companies in the field of variable annuity life insurance and that the Chicago School Board was about to execute a contract with Valic for the purchase of a group policy covering thousands of teachers. The price paid by Hupp for the Valic stock ranged from $24.75 per share to $47 per share. At the time of Hupp's last purchase of Valic stock in January 1966, when the price was $47 per share, Gray allegedly stated that, in his opinion, Valic stock might go to $75 per share "at an early date." In the weeks after this purchase, however, the market price of Valic stock began to drop. In March 1967, Hupp sold his shares of Valic through a different broker-dealer for approximately $17.50 per share. Gray made no further representations to Hupp concerning Valic after March 1967. Hupp discovered Gray's alleged misrepresentations and omissions by accident in August 1970, during a conversation with a fellow employee in which Gray was told that the co-worker's wife, "a Chicago school teacher, had been solicited to purchase a variable annuity life insurance policy by several large in-

---

1. Rule 12(b) provides, in part: "If, on a motion asserting . . . failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . . ."

surance firms, contrary to Gray's representation that Valic was the only firm marketing a variable policy."

The sole question on appeal is whether the plaintiff can avoid the bar of the statute of limitations.

### The Section 10(b) Claim

In Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123 (7th Cir. 1972), this court held that where an action is brought under § 10(b) of the Securities Exchange Act of 1934 and Illinois is the forum state, the district court should apply the three-year statute of limitations of the Illinois Securities Law (Ill.Rev.Stat. ch. 121½, § 137.13D). In the present case, all of the plaintiff's dealings in Valic stock ended in 1967 and yet the complaint was not filed until September 1971, over four years later. The plaintiff contends, however, that the doctrine of fraudulent concealment, which he particularly emphasized in the proposed amended complaint, tolled the statute of limitations in this case until Hupp discovered the misrepresentations in August 1970.

■ ■ This court recognized in *Parrent* that the statute of limitations in a § 10(b) action may be tolled by the "equitable doctrine" of fraudulent concealment. In order to invoke this doctrine, however, the plaintiff must have remained ignorant of the fraud "without any fault or want of diligence or care on his part." Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874). It is well established that a plaintiff may not merely rely on his own unawareness of the facts or law to toll the statute. Morgan v. Koch, 419 F.2d 993, 997 (7th Cir. 1969); Laundry Equip. Sales Corp. v. Borg-Warner Corp., 334 F.2d 788, 792 (7th Cir. 1964). The plaintiff, rather, has the burden of showing that he "exercised reasonable care and diligence in

seeking to learn the facts which would disclose fraud." Morgan v. Koch, *supra* 419 F.2d at 997. The statutory period "[does] not await appellant's leisurely discovery of the full details of the alleged scheme." Klein v. Bower, 421 F. 2d 338, 343 (2d Cir. 1970).

In the present case, Hupp alleged, in his original complaint, that in the exercise of due diligence, he learned of the facts giving rise to this cause of action in August 1970. Yet in neither the complaint, the proposed amended complaint, nor the deposition did the plaintiff indicate by way of fleshing out the allegations of diligence any actual steps which he had taken prior to August 1970 to discover the true facts about Valic. Indeed, the only conclusion is that he remained narcous until August 1970.

The undisputed facts in the plaintiff's complaint and deposition reveal that Hupp was on notice by March 1967, at the very latest, of the facts from which he should have known of the claimed fraud. When Hupp made his final purchase of Valic stock in January 1966 (at $47 per share), Gray told the plaintiff that the market price might soon rise to $75 per share. Shortly thereafter the price of Valic stock fell and, by March 1967, when Hupp ultimately sold his shares, the price was approximately $17.50 per share. This represented nearly a $30 per share loss for Hupp.

Even a wholly unsophisticated investor should have realized in March 1967—when the market price had fallen to $17.50 rather than rising to $75—the existence of facts sufficient to precipitate into his consciousness a geographical paraphrase of the somewhat hackneyed remark of Marcellus to Horatio.[2] The sharp fall in the market price was not a concealed fact but, rather, was clearly and painfully revealed to the plaintiff.[3] "At the very least, these cir-

---

2. W. Shakespeare, Hamlet, Prince of Denmark, Act I, Scene iv, 90.

3. The present case is thus distinguishable from Dzenitis v. Merrill Lynch, Pierce, Fen-

ner & Smith, Inc., 494 F.2d 168 (10th Cir. 1974). In *Dzenitis*, the alleged fraud was churning, an activity "not easily recognizable to unsophisticated investors." 494 F.2d at 172.

cumstances should have aroused suspicion or curiosity on the part of plaintiff." Morgan v. Koch, *supra* 419 F.2d at 998. Hupp, moreover, had an opportunity to investigate the representations made to him concerning Valic. The plaintiff sold his Valic stock through a broker-dealer other than Becker and could easily have inquired, at the time of the sale, as to what had happened to Valic. Yet although Hupp had notice that something was amiss and ample opportunity to investigate, he did nothing.

In his proposed amended complaint, Hupp added the allegations that "plaintiff reposed in defendant Gray special trust and confidence with respect to transactions in securities" and that, due to this trust and confidence, Hupp was "lulled into a sense of security" and "deterred from suspecting that fraud had been perpetrated upon him." Hupp contends that the existence of a fiduciary relationship could excuse his non-discovery of the fraud and that the proposed complaint was, therefore, not barred by the statute of limitations.

 While the existence of a fiduciary relationship is, no doubt, one factor which a court should consider in determining whether a plaintiff has exercised due diligence, a mere allegation that such a relationship existed is alone not necessarily determinative. A court should also consider other factors, including the nature of the fraud alleged, the opportunity to discover the fraud, and the subsequent actions of the defendant. Morgan v. Koch, *supra* at 997. Here, as indicated above, the fact which would have put a reasonable person on notice of the possibility of fraud, namely, the drastic fall in the market price, was not concealed from Hupp. In addition, Hupp admitted that, after March 1967, Gray made no further representa-

tions to him about Valic.[4] Yet in his proposed amended complaint, Hupp again failed to indicate any steps he had taken to find out why Valic stock had failed so dismally to live up to Gray's representations. Hupp's conclusory assertion that he had been "lulled into a sense of security" by his fiduciary relationship with Gray is, moreover, not sufficient to invoke the doctrine of fraudulent concealment. Turner v. Lundquist, 377 F.2d 44, 48 (9th Cir. 1967).

Hupp also argues that even though certain facts were undisputed, these facts were susceptible of conflicting inferences and would not support a summary judgment type of dismissal, citing United States v. Diebold, Inc., 369 U.S. 653, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, we do not deem the salient facts of the 1967 notice and subsequent inactivity to be either disputed or susceptible of conflicting inferences.[5]

Plaintiff, having failed to take any steps to uncover the fraud—although by March 1967 he knew of facts which would have put a reasonable person on notice—cannot invoke the doctrine of fraudulent concealment for the period subsequent to March 1967. And since Hupp's failure to exercise due diligence was apparent from the undisputed facts in his complaint and deposition, the district court acted properly in dismissing the complaint and denying leave to file the proposed amended complaint on the ground that both were barred by the three-year statute of limitations.

*The Common Law Claims*

 Hupp's claims under the Illinois common law were before the district court under the doctrine of pendent jurisdiction. Since the plaintiff's federal claim is time barred, the district court properly dismissed the pendent

4. Hupp did speak to Gray on two occasions after March 1967, but Valic was not discussed at either time.

5. The present situation is distinguishable from those cases in which summary disposi-

tion was held to be improper due to the presence of a genuine factual dispute. *E. g.*, Johns Hopkins University v. Hutton, 422 F. 2d 1124 (4th Cir. 1970); Azalea Meats, Inc. v. Muscat, 386 F.2d 5 (5th Cir. 1967).

state claims. United Mine Workers v. Gibbs, 383 U.S. 715, 725–726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[6]

Affirmed.

6. In his original complaint, Hupp alleged that defendants violated the margin trading requirements of § 7 of the Securities Exchange Act of 1934 by arranging certain loans for Hupp. The § 7 claim was not included in plaintiff's proposed amended complaint. Hupp, moreover, did not argue on appeal that the district court erred in its dismissal of this count. It would appear, therefore, that Hupp has abandoned the § 7 claim. In any case, having examined the record, we agree with the district court that the § 7 claim is time barred. The loans in question were made in the last three months of 1965. Hupp admitted, in his deposition, that he was fully aware, at the end of 1965, of the facts which would give rise to a cause of action for violation of § 7. The doctrine of fraudulent concealment, therefore, is inapplicable to this claim. The longest statute of limitations cited by Hupp is five years (Ill.Rev.Stat. ch. 83, § 16). The statute of limitations began to run on the § 7 claim in December 1965 and this suit was filed in September 1971, nine months after the period of limitations had expired.