Arthur R. GIERINGER; A. John Gieringer; Arthur R. Gieringer as Trustee For Dorothy A. Weiler; Arthur R. Gieringer and A. John Gieringer as Representatives of all Minority Shareholders of Vilter Manufacturing Corporation; and Arthur R. Gieringer and A. John Gieringer as Shareholders on behalf of Vilter Manufacturing Corporation, Plaintiffs,

v.

A. A. SILVERMAN; E. J. Kocher; Leo V. Ryan; Norma Loos, as Personal Representative of the Estate of Ludwig E. Loos; A. O. Vogel; E. I. Van Housen; W. I. Grant; Norma Loos; Louise E. Fridl; Duff & Phelps, Inc., an Illinois corporation; Vilter Employees' Profit Sharing Plan Trust, Defendants.

Civ. A. No. 81–C–859.

United States District Court,
E. D. Wisconsin.

May 20, 1982.

Warren S. Blumenthal, Milwaukee, Wis., and Miriam F. Miquelon, Chicago, Ill., for plaintiffs.

David J. Hase, Milwaukee, Wis., for defendants Silverman, Kocher, Ryan, Loos, Vogel, Grant, Fridl & Vilter Emp. Profit Sharing Trust.

Joseph E. Coughlin, Chicago, Ill., for defendant Duff & Phelps.

Francis R. Croak, Milwaukee, Wis., for defendant Van Housen.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action brought pursuant to § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5, §§ 551.42(3) and 551.-59(3), Wis.Stats., and the common law of the State of Wisconsin for compensatory and punitive damages and for removal of the senior officers and directors of the Vilter Manufacturing Corporation ("Vilter"), arising out of a redemption offering made by Vilter in September 1979 for its own shares of stock.

The plaintiffs are minority shareholders of Vilter who owned stock on September 28, 1979, the date of the redemption offering, and who continue to own shares in the company. They seek to represent a class of all shareholders of Vilter as of September 28, 1979, with the exception of the defendants A. O. Vogel, L. E. Loos, Norma Loos, Louise E. Fridl, the Vilter Employees' Profit Sharing Plan Trust, A. A. Silverman, and E. J. Kocher, denominated in the complaint as the "controlling shareholders." Plaintiffs allege that the redemption offering had no valid corporate purpose but was instead designed to increase the value and earnings of the shares held by the controlling shareholders without cost to themselves by forcing out the minority shareholders; that the $40 valuation put on the shares in the offering was below fair market value; that as a result of interest payable on the loan extended by the defendant M & I Marshall & Ilsley Bank ("M & I") to Vilter for purchase of the shares redeemed, one result of the redemption was that no dividends were payable thereafter on corporate shares; and that a second result of the offering was to destroy any market for outstanding shares held by the minority shareholders and not sold to Vilter pursuant to the redemption offer.

The complaint has fourteen claims. Claims one through eight are founded on the Securities and Exchange Act of 1934. Claims one and two allege injury to the minority shareholders and Vilter, respectively, arising out of the failure to reveal in corporate mailings made prior to September 28, 1979, that the majority shareholders were causing the corporation to accumulate cash in order to make a redemption offering forcing out the minority shareholders. Claims three and five allege on behalf of the minority shareholders that the September 28, 1979 offer made omissions of material fact in that it failed to state that there was no valid corporate purpose for the offer, that the offer was instead made for the sole benefit of majority shareholders, and failed to reveal how Duff & Phelps, Inc., which was hired to evaluate the stock, went about its evaluation, and that the offer also contained false statements in that it stated that the tender of shares by minority shareholders was voluntary, that there was a potential for a future loss of dividends, that Silverman and Kocher would have a controlling interest in the corporation and could in future authorize a merger or sale

of assets, and that Duff & Phelps, Inc. made an independent evaluation. Claims four and six make the same allegations of omission and misstatement on behalf of the corporation. Claim seven alleges that Duff & Phelps, Inc. permitted the corporation to make false statements regarding Duff & Phelps' independence in the offer. Claim eight is directed at the M & I. Claim nine raises allegations of violations of §§ 551.-42(3) and 551.59(3), Wis.Stats., by the controlling shareholders, and claims ten through fourteen allege breaches of common law fiduciary duty by the controlling shareholders.

In a decision and order issued on October 6, 1981, the court granted M & I's motion for summary judgment based on the running of the applicable statute of limitations. Claim eight is therefore no longer at issue in this action.

Since that decision and order was issued, ten motions have been filed which are now before the court for decision: (1) the plaintiffs' motion for joinder of Vilter Manufacturing Corporation as a party defendant; (2) the plaintiffs' motion for the entry of final judgment under Rule 54(b) of the Federal Rules of Civil Procedure in favor of M & I on claim eight; (3) the plaintiffs' motion for leave to file a notice of appearance of additional counsel; (4) Duff & Phelps' motion for summary judgment; (5) Duff & Phelps' motion for a protective order continuing the dates of certain depositions until after its summary judgment motion is decided; (6) plaintiffs' motion to compel discovery regarding Duff & Phelps; (7) plaintiffs' motion brought pursuant to Rule 56(f) of the Federal Rules of Civil Procedure to postpone decision on Duff & Phelps' summary judgment motion pending discovery; (8) the motion of all defendants except Duff & Phelps for summary judgment; (9) the plaintiffs' Rule 56(f) motion to postpone decision on the second summary judgment motion pending discovery; and (10) the plaintiffs' motion to compel discovery with respect to the deposition of the defendant Silverman.

The plaintiffs' motion to add counsel is unopposed and is granted. Since certain of the plaintiffs' claims are brought as derivative claims on behalf of the corporation their motion to add Vilter as a party defendant will also be granted. While the defendants in their briefs raise issues as to the adequacy of the plaintiffs' representation of Vilter and the adequacy of the claims stated on behalf of Vilter, they concede that if derivative claims are asserted Vilter is a necessary party. The defendants' summary judgment motions will also be granted on statute of limitations grounds. No additional discovery is required on that point. Therefore, the plaintiffs' motions for further discovery will be denied, Duff & Phelps' motion for a protective order is moot, and the plaintiffs' motion for entry of a partial judgment is also moot.

*The Statute of Limitations*

■ Section 551.59(5), Wis.Stats., which all parties agree is the statute of limitations applicable to the plaintiffs' Securities and Exchange Act claims and to their Wisconsin securities act claim, see *Cahill v. Ernst & Ernst*, 448 F.Supp. 84, 87–88 (E.D.Wis.1978), vacated and remanded 588 F.2d 835 (7th Cir. 1978), on remand 478 F.Supp. 1186 (E.D.Wis.1979), aff'd 625 F.2d 151 (7th Cir. 1980), provides in part:

"No action shall be maintained under this section unless commenced before the expiration of 3 years after the act or transaction constituting the violation or the expiration of one year after the discovery of the facts constituting the violation, whichever first expires * * *."

As noted in the previous decision and order in this case, "[t]he commencement of a statutory period of limitation '[does] not await appellant's leisurely discovery of the full details of the alleged scheme.'" *Turner v. First Wisconsin Mortgage Trust*, 454 F.Supp. 899, 906 (E.D.Wis.1978), quoting from *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970). See also *Hupp v. Gray*, 500 F.2d 993, 996–997 (7th Cir. 1974); *Trecker v. Scag*, 500 F.Supp. 752, 754–755 (E.D.Wis. 1980). Rather, the statute begins to run

when the defrauded party is " 'in possession of such essential facts as will, if diligently investigated, disclose the fraud. The burden of diligent inquiry is upon the defrauded party as soon as he has such information as indicates where the facts constituting the fraud can be discovered.' " *Cahill v. Ernst & Ernst, supra,* 448 F.Supp. at 88, quoting from *Milwaukee Western Bank v. Lienemann,* 15 Wis.2d 61, 112 N.W.2d 190 (1961).

■ The plaintiffs Arthur R. Gieringer and A. John Gieringer have both been deposed and both testified that they received copies of the tender offer in the week following September 28, 1979. Both also stated that they knew at once that the $40 offering price per share was too low. The offer on its face states that Vilter will be incurring a substantial debt to M & I which may have a negative effect on future dividends, that the marketability of stock retained by minority shareholders may decline, and that if a substantial number of shares are tendered the majority shareholders may achieve absolute control over such matters as future mergers, acquisitions, or sale of assets.

A. John Gieringer testified that, knowing at once as he did on receipt of the tender offer that the price was too low, he called his father and left the future conduct of the matter in his father's hands. Arthur R. Gieringer at once called his accountant and set him to work figuring out the true value of the stock, and he contacted several attorneys to begin an investigation. As to the plaintiffs' claims against the controlling shareholders, therefore, there is no question but that the plaintiffs knew on receipt of the tender offer that the price offered was unjust and merited further investigation, even if they did not then know all of the details of the supposed scheme of the controlling shareholders. The law does not require full knowledge of a scheme or of its consequences. It requires only sufficient knowledge to put a reasonable person on notice of the need for diligent investigation. *Turner v. First Wisconsin Mortgage Trust, supra.* As for Duff & Phelps' role in the alleged fraud, plaintiffs contend that not until January 1981 did they see the Duff &

Phelps' report and that, even had they seen it earlier, it would have required several months of analysis before an adequate evaluation of its accuracy could be made. The tender offer states, however, that the Duff & Phelps' report is available for inspection upon request, and plaintiffs do not contest that they could have reviewed the report any time after receipt of the tender offer in early October 1979.

In sum, § 551.59(5), Wis.Stats., does not allow a year to file suit after the conclusion of a diligent investigation. It allows a year in total in which to make such investigation after receipt of sufficient information to put a party on notice of possible fraud and to commence legal proceedings. In light of the information revealed on the face of the tender offer and the plaintiffs' immediate suspicions, their year began on receipt of the September 28, 1979 offer. They did not file suit until July 21, 1981, and their suit therefore is barred.

The plaintiffs contend, first, that the doctrine of equitable tolling applies to preclude commencement of the limitations period and, second, that the defendants entered into settlement negotiations with the plaintiffs and are estopped from raising the bar of the statute of limitations. Plaintiffs also contend that they need time to complete discovery before the court rules on the summary judgment motions.

■ The doctrine of equitable tolling applies where, after a cause of action accrues, a defendant takes further steps to conceal the cause of action with the result that the plaintiff remains in ignorance of his rights through no fault of his own. *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1296 (7th Cir. 1975). The doctrine does not apply where the actions creating the claim are completed and the defendant takes no further steps to conceal his past actions. *Tomera v. Galt,* 511 F.2d 504, 510 (7th Cir. 1975). Nor does it apply under § 551.59(5), Wis.Stats., where a plaintiff is in possession of sufficient facts to put him on notice of the potential for fraud and of the need for

further investigation, thus starting the running of the one year statute of limitations. *Cahill v. Ernst & Ernst,* supra, 448 F.Supp. at 87; *Trecker v. Scag,* 514 F.Supp. 364, 367 (E.D.Wis.1967). As stated in *Cahill* at 87, "[t]he equitable doctrine of fraudulent concealment is applicable only in those cases where the application of the state statute would otherwise bar the action. * * * If the state statute provides that the limitation period begins to run when the plaintiff has knowledge of the fraud or should have had knowledge of it, the federal doctrine simply has no applicability." In this case there is no suggestion that after September 28, 1979, the defendants acted to conceal their alleged omissions and misstatements. Further, the plaintiffs by their own testimony knew within a week of that date the essence, although not every detail, of the defendants' alleged fraudulent scheme. As of that date they had one year only to investigate and substantiate their suspicions and to file suit.

On November 4, 1980, the plaintiffs initiated contact with the defendants through their respective counsel. The exact sequence of events thereafter is not clear, but there was a series of communications between the parties principally through their counsel ending in a written offer by the plaintiffs made on May 21, 1981, to sell their stock to Vilter at $192.70 per share. The offer was rejected in a letter dated June 11, 1981. (See the plaintiffs' memorandum filed December 28, 1981, at pages 6–7.) The plaintiffs contend that those negotiations tolled the statute of limitations. In support of their contention they cite only the case of *Manos v. Trans World Airlines, Inc.,* 295 F.Supp. 1170, 1174 n.2 (N.D.Ill. 1969), wherein the court noted that under some circumstances under California law the conduct of settlement negotiations may toll a statute of limitations.

■ In contrast to the equitable tolling doctrine, the doctrine of equitable estoppel comes into play after the limitations period has expired and applies only where one party by his conduct has induced another to forego filing suit within the limitations pe-

riod. *Bomba v. Belvidere, Inc.,* 579 F.2d 1067 (7th Cir. 1978). Under Wisconsin law the defendant's representations or conduct which induce the plaintiff's forbearance must precede the expiration of the limitations period, *State ex rel. Susedik v. Knutson,* 52 Wis.2d 593, 597, 191 N.W.2d 23 (1971), and the defendant's conduct must be so unfair and misleading as to outbalance the public's interest in setting a readily determinable limitation on actions. *Poeske v. Estreen,* 55 Wis.2d 238, 244, 198 N.W.2d 625 (1972). Negotiations alone will not bring into play the doctrine of equitable estoppel, although a promise to pay may do so, particularly if the plaintiff failed to file suit due to reliance on the promised payment. *Bomba v. Belvidere, Inc.,* supra, at 1071. See also 44 A.L.R.3d 482, 494, "Promises to Settle or Perform as Estopping Reliance on Statute of Limitations."

■ The plaintiffs in this case do not contend that the defendants or Vilter made any promises to pay. At best there were unsuccessful negotiations over a seven month period. Furthermore, even had the negotiations been sufficient to bring the doctrine of equitable estoppel into play, they did not commence until after the expiration of the limitations period. Therefore the plaintiffs cannot rely on them to excuse their neglect in filing suit within the appropriate time. Finally, as to the defendant Duff & Phelps, it was not even a party to the negotiations, which were conducted with counsel for the controlling shareholders.

Plaintiffs also contend that summary judgment is inappropriate under Rule 56(f) of the Federal Rules of Civil Procedure because they have not completed their discovery and, indeed, have been prevented by the defendants' lack of cooperation from conducting discovery since this suit was filed. Plaintiffs also contend that summary judgment is in any event an inappropriate method for resolution of a statute of limitations issue in a securities case.

Courts in this circuit have not infrequently disposed of securities cases on statute of limitations grounds where the material

facts were not in dispute and justified the entry of summary judgment. See, e.g., *Schaefer v. First National Bank of Lincolnwood*, 509 F.2d 1287, 1298–1299 (7th Cir. 1975); *Turner v. First Wisconsin Mortgage Trust*, 454 F.Supp. 899, 906 (E.D.Wis.1978); *Cahill v. Ernst & Ernst*, 448 F.Supp. 84, 88 (E.D.Wis.1978), vacated and remanded 588 F.2d 835 (7th Cir. 1978), on remand 478 F.Supp. 1186 (E.D.Wis.1979), aff'd 625 F.2d 151 (7th Cir. 1980); *Trecker v. Scag*, 514 F.Supp. 364, 367 (E.D.Wis.1981); *Hupp v. Gray*, 500 F.2d 993, 997 (7th Cir. 1974). The material facts in this case on the statute of limitations issue are established through the plaintiffs' complaint, the transcripts of their sworn deposition testimony, and the documents submitted as an appendix to their memorandum of December 28, 1981. Those items are a sufficient basis for the entry of summary judgment. *Hupp v. Gray*, supra.

Rule 56(f) of the Federal Rules of Civil Procedure provides:

> "(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

In light of the type of knowledge which starts the running of the statute of limitations as it is described in § 551.59(3), Wis. Stats., the relevant inquiry in this case is what the plaintiffs knew or should have known more than one year before filing suit. None of the factual information supplied by the plaintiffs relevant to that issue is controverted by the defendants and none of the information on which the court relies in granting the motion has been derived from any source but the plaintiffs. Rule 56(f), in contrast, is designed to protect a nonmovant who has had insufficient time to gather information or who does not have access to the information needed to oppose the summary judgment motion. As a prerequisite to obtaining relief under Rule 56(f), the nonmovant must by affidavit advise the court why he cannot obtain the needed information. 10 Wright and Miller's *Federal Practice and Procedure* § 2740. The plaintiffs have not shown to the court what information not in their possession would enable them to defeat the summary judgment motions and, since the motions are granted based on the plaintiffs' own admissions, the court is satisfied that there is no such information which plaintiffs could obtain through discovery which would put the plaintiffs' knowledge in a different light. Consequently, there is no cause to delay the entry of summary judgment on claims one through seven, which are the federal securities claims, or claim nine, brought under §§ 551.42(3) and 551.59(3), to which the same statute of limitations applies, and the defendants' motions will be granted. Count eight has previously been dismissed on statute of limitations grounds.

*Other Considerations*

■ The statute of limitations in itself is a sufficient ground for dismissal of claims one through seven and claim nine. In their briefs the parties have also raised a number of additional issues. Most significant among them is the issue of plaintiffs' standing to sue for a violation of § 10(b) and Rule 10b–5.

As established by their deposition testimony, both of the plaintiffs owned shares in Vilter prior to the September 28, 1979 tender offer and neither of them tendered any shares in accordance with the offer because both felt that the offering price was too low. In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737–738, 95 S.Ct. 1917, 1926, 44 L.Ed.2d 539 (1975), the Supreme Court held that one who neither purchases nor sells securities in reliance on false or misleading information has no cause of action for a violation of § 10(b) or Rule 10b–5:

> "Three principal classes of potential plaintiffs are presently barred by the *Birnbaum* rule [upheld in *Blue Chip*]. First are potential purchasers of shares

\* \* \* who allege that they decided not to purchase because of an unduly gloomy representation or the omission of favorable material which made the issuer appear to be a less favorable investment vehicle than it actually was. Second are actual shareholders in the issuer who allege that they decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material. Third are shareholders, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment due to corporate or insider activities in connection with the purchase or sale of securities which violate Rule 10b–5. \* \* \* "

The plaintiffs in this case are in the third class of shareholders described. They claim to have lost some of the value of their investment through insider activity in connection with the tender offer, but did not themselves either purchase or sell and therefore cannot maintain a claim on their own behalf. See also *O'Brien v. Continental Illinois National Bank and Trust Company of Chicago*, 593 F.2d 54 (7th Cir. 1979); *Wright v. Heizer Corporation*, 560 F.2d 236, 246–247 (7th Cir. 1977). Plaintiffs cite *Goodman v. Epstein*, 582 F.2d 388 (7th Cir. 1978), cert. denied 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979), for the proposition that any time a shareholder must make an "investment decision," he has standing to sue under Rule 10b–5. The case does not support that proposition, holding instead only that under the circumstances of the partnership agreement at issue in that case, each time the limited partners were called upon to make a new infusion of capital into the partnership they were being called upon to make a new investment and when they did so were entitled to full disclosure about the status of the partnership venture.

■ On the other hand, where a corporation is itself the purchaser or seller of securities and is injured thereby, shareholders who did not themselves purchase or sell may maintain a derivative action on behalf of the corporation. *Blue Chip Stamps v. Manor Drug Stores*, supra, 421 U.S. at 738, 95 S.Ct. at 1926; *Wright v. Heizer Corpora-*

tion, supra, at 237; *Surowitz v. Hilton Hotels Corporation*, 342 F.2d 596, 604 (7th Cir. 1965), rev'd on other grounds 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1965).

■ In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Supreme Court held that a breach of common law fiduciary duties by a corporation, without any deception, misrepresentation, or nondisclosure of material facts, is not a violation of § 10(b) or Rule 10b–5. Thus in that case a corporation merging with its subsidiary, which brought out the minority shareholders at an allegedly unjust price but which made full disclosure in its offering information, was not liable under the federal securities laws. The defendants in this case contend that the plaintiffs at best have stated claims against them for breach of common law fiduciary duty, but that no misrepresentations or material nondisclosures were made in the tender offer. They also contend that no injury to the corporation is alleged.

The court is inclined to agree on both points. As to injury, plaintiffs allege vaguely that the capital used for the repurchase of stock could have been used for other purposes had the repurchase not been made. But a repurchase by a corporation of its own stock at a price less than fair market value is rather a benefit to the corporation than an injury. *Rochelle v. Marine Midland Grace Trust Company of New York*, 535 F.2d 523, 528 (9th Cir. 1976); *Hoover v. Allen*, 241 F.Supp. 213, 227 (S.D. N.Y.1965). As to misrepresentations or material omissions:

"When the nature and scope of a transaction are clear, it is not necessary for the corporate instigators to characterize the various effects of the transaction as favorable or unfavorable or to evaluate its overall effect; such characterization is a matter of judgment, not fact. [Citation omitted.] However, it is necessary for the impact of a transaction to be described factually to the extent that such information would be significant to a reasonable, disinterested director [citation omit-

ted] or shareholder, [citations omitted]." *Alabama Farm Bureau Mutual Casualty Company, Inc. v. American Fidelity Life Insurance Company*, 606 F.2d 602, 611 (5th Cir. 1979).

Thus the mere nondisclosure of the directors' motive for a transaction is not a 10b–5 violation if the underlying material facts are disclosed. *Id.* Nor can a plaintiff circumvent the *Santa Fe* rule by alleging that the directors made a misstatement by maintaining that their actions were in the best interests of the shareholders, or by claiming that the directors failed to disclose their own breaches of fiduciary duty. *Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir. 1978).

In claims one and two plaintiffs allege that the controlling shareholders failed to reveal in their pre-September 28, 1979 reports that they were causing Vilter to accumulate capital in order to make the redemption offering and force out minority shareholders. Plaintiffs testified that they were aware of the accumulation of capital, however. The directors' motivation is not a material "fact." *Alabama Farm Bureau Mutual Casualty Company, Inc. v. American Fidelity Life Insurance Company*, supra. In claims three and five the plaintiffs allege that the tender offer omitted to state that the redemption served no valid corporate purpose and that it would increase the value of the shares held by controlling shareholders and increase their control, and failed to reveal how Duff & Phelps had arrived at its $40 per share valuation. An allegation of lack of valid corporate purpose cannot be used to evade the *Santa Fe* requirements. *Biesenbach v. Guenther*, supra. Furthermore, the acquisition of control of a corporation by causing it to repurchase its own stock does not in and of itself constitute an injury to the corporation, without some allegation that the control would cause harm to the corporation's interests as opposed to the interests of the minority shareholders. *Hoover v. Allen*, supra, at 227–229. As to the Duff & Phelps report, the tender offer describes the report and its conclusions briefly and states that the report is available for inspection by any shareholder. The offer also states that the $40 price was arrived at initially by the corporation and not by Duff & Phelps, because it was the price at which certain of the controlling shareholders were willing to resell their shares to the corporation. Under the circumstances, there was no material omission since the valuation information was readily available, although not set forth in its entirety on the face of the offer. In claims four and six plaintiffs allege that the tender offer misrepresents that the minority shareholders' decision whether or not to tender shares was a "voluntary" decision, that there might be a future restriction on payment of dividends, that the defendants Silverman and Kocher might as a result of the offer acquire a majority interest sufficient to enable them in future to vote a merger or sale of assets without approval from any other stockholder, and that Duff & Phelps was an "independent" investment analyst. The claim of misstatements is unimpressive. In fact, the offer did reveal that minority shareholders who chose not to sell might in future find it difficult to sell their shares, that the repayment of the M & I loan might have a negative effect on dividends, and that Silverman and Kocher might acquire a controlling interest. In sum, plaintiffs' complaints are rather that the consequences of the offer are unpalatable than that the consequences were not adequately revealed in the offer. Their claim in effect is that they were treated badly by the majority shareholders. Such a claim sets forth a possible breach of fiduciary duty, but not a deception within the meaning of the federal securities laws.

As plaintiffs point out repeatedly, the defendants have not moved to dismiss the complaint and, had they done so and their motion been granted, plaintiffs could have sought leave to replead to state claims under the federal securities laws. Since the claims must be dismissed on statute of limitations grounds in any case, the discussion above is in some part gratuitous. However, the parties devoted considerable attention in the briefs to the matters discussed in this section, which is intended as a response to those arguments.

*The Pendent Claims*

■ Claims ten through fourteen are pendent state common law claims. There is no diversity of citizenship. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, the Supreme Court noted that even though a federal court may have power to exercise jurisdiction over pendent state claims, if the federal claims are dismissed before trial the state claims should also be dismissed, barring some unfairness to the litigants, such as the running of the state statute of limitations. Cf. *O'Brien v. Continental Illinois National Bank and Trust Company of Chicago*, 593 F.2d 54, 64 (7th Cir. 1979) (abuse of discretion to dismiss where the federal claims had not been insubstantial and the statute of limitations for filing in state court had run on the pendent claims).

The plaintiffs have advised the court that a six year statute of limitations applies to their pendent claims. Since they will not be foreclosed from pursuing those claims in state court, they are properly dismissed by this court. *Hupp v. Gray*, 500 F.2d 993, 997–998 (7th Cir. 1974).

ORDER

For the foregoing reasons,

IT IS ORDERED that the plaintiffs' motion for leave to file a notice of appearance of additional counsel is granted.

IT IS FURTHER ORDERED that the plaintiffs' motion to join Vilter Manufacturing Corporation as a party defendant is granted.

IT IS FURTHER ORDERED that the plaintiffs' motions to compel discovery and their Rule 56(f) motions to delay consideration of the defendants' summary judgment motions pending the completion of discovery are denied.

IT IS FURTHER ORDERED that the defendants' motions for summary judgment are granted, and that judgment be entered dismissing claims one through nine with prejudice and dismissing claims ten through fourteen without prejudice.