Richard N. ABRAMS, Plaintiff,

v.

OPPENHEIMER GOVERNMENT SECURITIES, INC., and James Zurek, Defendants.

No. 82 C 1356.

United States District Court, N.D. Illinois, E.D.

Edited Memorandum Nunc Pro Tunc Aug. 8, 1984.

Decided Jan. 3, 1983.

Richard W. Hillsberg, Tishler & Wald, Chicago, Ill., for plaintiff.

James E. Beckley, Richard S. Schultz, Jr., J. David Montague, James E. Beckley

& Associates, P.C., Chicago, Ill., for defendants.

## Memorandum

LEIGHTON, District Judge.

Richard Abrams has filed a seven-count amended complaint against defendants James Zurek and Oppenheimer Government Securities, Inc. Count I alleges a violation of the Commodity Exchange Act (CEA), 7 U.S.C. §§ 1, *et seq.* Count II alleges violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Count III claims that defendants violated both Section 10(b) of the 1934 Act and its adjunct, S.E.C. Rule 10b–5. Counts IV through VII, invoking the court's pendent jurisdiction, allege respectively that defendants violated the Illinois Securities Law of 1953, committed common law fraud, acted negligently, and breached their contract with plaintiff. The cause is before the court on defendants' motion to dismiss the separate counts of the complaint on various grounds. For the following reasons, defendants' motion is granted in part and denied in part.

## I

On February 6, 1981, plaintiff purchased from Oppenheimer Governmental Securities, Inc. (OGS), a contract for the forward delivery of Government National Mortgage Association (GNMA) securities. GNMA certificates evidence a participation interest in a pool of Government-underwritten residential mortgages. Typically issued by mortgage bankers, GNMA certificates are guaranteed as to payment of principal and interest by the federal government. The forward contract obligated OGS to sell a certain amount of GNMA certificates to plaintiff on May 20, 1981 for a price determined at the time the contract was entered into. Plaintiff was required to make a 10% "good faith" deposit on the agreed purchase price.

Plaintiff alleges that defendant Zurek, an account representative of OGS, induced him to contract for approximately $200,000 worth of the GNMA certificates by making certain misrepresentations. According to the complaint, Zurek told plaintiff that the value of the GNMAs would increase by approximately six points for every one point decline in the prime lending rate. Zurek recommended immediate purchase of the GNMAs because he had never "seen the bonds so low." In addition, Zurek promised plaintiff that he would receive 18% interest on his "good faith" deposit." As fortune would have it, the prime lending rate declined after this transaction; however, to Zurek's surprise and plaintiff's dismay, the value of GNMAs dropped too. Furthermore, plaintiff was paid only 14% to 15% interest on his "good faith" deposit. Confounding matters, Zurek neglected to tell plaintiff that the "good faith" deposit was subject to a margin requirement. Consequently, plaintiff refused to make a supplemental deposit in order to retain his investment when OGS instituted a margin call. On April 13, 1981, OGS sold plaintiff's GNMAs on the open market due to his failure to pay the additional deposit. Defendants since have refused to return $17,500 of the funds that were deposited, claiming that market conditions had dissipated plaintiff's account by that amount. Abrams seeks to recover the $17,500 in this action.

## II

In a recent opinion, the Seventh Circuit ruled that GNMA certificates are commodities within the meaning of CEA § 2(a)(1), 7 U.S.C. § 2. *Board of Trade of City of Chicago v. S.E.C.*, 677 F.2d 1137, 1142 (7th Cir.), *judgment vacated as moot,* 459 U.S. 1026, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982). Defendants validly contend, however, that the "Treasury Amendment" of 1974, 7 U.S.C. § 2, excludes from the coverage of the Commodities Act transactions involving certain financial instruments, even though they are commodities, when trading does not take place on a formally organized futures exchange:

Nothing in this chapter [the CEA] shall be deemed to govern or in any way be applicable to transactions in foreign currency, security warrants, security rights, resales of installment loan contracts, repurchase options, government securities, or mortgages and mortgage purchase commitments, unless such transactions involve the sale thereof for future delivery conducted on a board of trade.

Judge Kocoras of this district recently conducted an exhaustive review of the legislative history of the Treasury Amendment and concluded that transactions involving GNMAs, which are essentially government backed mortgage purchase commitments, clearly are exempt from the ambit of the CEA when trading is "over the counter" rather than through an organized exchange. *See ABM Industries, Inc. v. Oppenheimer Government Securities, Inc.*, 82 C 2018 (October 21, 1982). Here, the pleadings and the submissions of the parties establish that the GNMA forward contract at issue was not a transaction through an exchange; plaintiff and Zurek negotiated face to face, defendants personally were responsible for the delivery of the GNMAs, and no third party was ever to be involved. *See ABM Industries, supra; Bache Halsey Stuart v. Affiliated Mortg. Inv.*, 445 F.Supp. 644, 646 (N.D.Ga.1977). Therefore, the court concludes that the Treasury Amendment exempts the transaction in this case from the coverage of the CEA. Accordingly, Count I of the amended complaint, which alleges that defendants violated provisions of the CEA, is dismissed.

### III

■ Defendants also urge the court to dismiss the counts of the complaint alleging violations of the antifraud provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. Their primary argument is that GNMA contracts are not securities within the meaning of the 1933 and 1934 Acts; and plaintiff, therefore, is barred from bringing this action. For the following reasons, the court concludes that

even though defendants' premise is valid the corollary is not.

A security is defined by statute as "any note, stock, ... evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, ... investment contract, ... or, in general, any interest or instrument commonly known as a 'security,' ... or warrant or right to subscribe to or purchase any of the foregoing." 15 U.S.C. § 77b(1); *see also* 15 U.S.C. § 78c(a)(10). The basic test for distinguishing transactions involving "investment contracts" or "instruments commonly known as securities" from other commercial dealings is

> whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.... The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.

*United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975). Defendants persuasively argue that a standard GNMA forward contract is not a "security" within the meaning of the securities laws. It is apparent that plaintiff did not invest in a common business venture with OGS by virtue of contracting with the company for the sale of GNMA certificates at a future date. There was no expectation among the parties that profits would be shared. *See LTV Federal Credit Union v. UMIC Government Securities, Inc.*, 523 F.Supp. 819, 830 (N.D.Tex.1981). Moreover, it is clear that any profit plaintiff hoped to derive through his investment was to come not from the managerial or entrepreneurial skills of OGS but from fluctuations of the market. The Seventh Circuit recently held that GNMA options, conceptually similar to GNMA forwards, are not "securities" as defined by the securities laws. *Board of Trade of City of Chicago v. S.E.C.*, 677 F.2d 1137, 1155–1159 (7th Cir.), *judgment vacated as moot,* 459 U.S. 1026, 103 S.Ct.

434, 74 L.Ed.2d 594 (1982). In addition, the *Board of Trade* court construed the terms "warrants or rights to subscribe or purchase" so narrowly that the standard GNMA forward contract is not subsumed into the definition of security by virtue of these criteria either. *Id.* Directly addressing the issue in this case, the Sixth Circuit determined that standard GNMA forward contracts are not securities. *S.E.C. v. G. Weeks Securities,* 678 F.2d 649, 652 (6th Cir.1982). Accordingly, the court concludes that the GNMA forward contract entered into by the parties is not a security as defined by 15 U.S.C. § 77b(1) or 15 U.S.C. § 78c(a)(10).[1]

■ However, the inquiry does not stop with this conclusion. It is well settled that courts should eschew a literal, overly narrow approach to transactions covered by the security laws; the focus instead should be on the underlying economic realities of the entire transaction. *See Board of Trade, supra,* at 1158; *Lincoln Nat. Bank v. Herber,* 604 F.2d 1038 (7th Cir.1979); *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 847, 848, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621 (1975). Although GNMA forward contracts may not be securities, it is now undisputed after *Board of Trade* that GNMA certificates are securities, although exempt from certain statutory requirements, like registration, because they are government guaranteed. 677 F.2d at 1157. But even "exempt securities" are subject to the antifraud provisions of the federal securities laws. *See LTV, Etc. v. UMIC Government Securities, Inc.,* 523 F.Supp. at 835, citing *Teamsters v. Daniel,* 439 U.S. 551, 564 n. 18, 99 S.Ct. 790, 799 n. 18, 58 L.Ed.2d 808 (1979).

■ Therefore, defendants' focus on whether a GNMA forward contract itself is a security is misplaced; the broader question before the court is whether the transaction in this case is covered by the antifraud provisions of the securities laws because the parties contracted for the sale of GNMA certificates which are undoubtedly securities. Indeed, the alleged misrepresentations made by defendants regarding the profit potential of the transaction went ultimately to the value of the GNMA certificates that were to be sold to plaintiff at a predetermined rate on the settlement date. But, defendants point out, the GNMAs were never delivered to plaintiff because he breached the GNMA forward agreement by failing to supplement his "good faith" deposit; therefore, it is argued, there was no completed "purchase" or "sale" of the GNMA certificates underlying the contract as required by the antifraud provisions of the Securities Acts. *See* 15 U.S.C. § 77q (1933 Act); 15 U.S.C. § 78j; S.E.C. Rule 10b–5. However, these terms of art are broadly defined, and it is well established that merely contracting to sell securities constitutes a "purchase" or "sale" of the underlying securities for purposes of the Securities Acts.[2] *See Blue Chip Stamps v.*

---

**1.** It has been brought to this court's attention that Judge Kocoras of this district, in deciding a case involving substantially the same issues as this cause, ruled that GNMA forwards were exempt securities. *See ABM Industries, Inc. v. Oppenheimer Government Securities, Inc.,* 82 C 2018 (N.D.Ill., October 21, 1982). Although the rationale underlying the court's conclusion is not presented in great detail, Judge Kocoras seems to have assumed that that GNMA forward contracts are securities because they relate to the sale of GNMA certificates which are undoubtedly securities. However, this court feels that this approach, the notion that a derivative instrument is itself transformed into a security solely because it concerns a transaction in securities, was squarely rejected by the Seventh Circuit panel in *Board of Trade,* although embraced by Judge Cudahy in dissent. *Compare* 677 F.2d at 1157 *with* 677 F.2d at 1182. Since

this court concludes, however, that GNMA forward contracts constitute a purchase or sale of the underlying GNMA certificates, the same result is reached here as in Judge Kocoras' decision.

**2.** Section 2(3) of the 1933 Act, 15 U.S.C. § 77b(3), provides that "the term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security for value." Section 3(a)(13) of the 1934 Act, 15 U.S.C. § 78c(a)(13), provides that "the terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire." Similarly, Section 3(a)(14) of the 1934 Act, 15 U.S.C. § 78c(a)(14), states that "the terms 'sale' and 'sell' each include any contract to sell or otherwise dispose of."

*Manor Drug Stores,* 421 U.S. 723, 749–751, 95 S.Ct. 1917, 1931–32, 44 L.Ed.2d 539 (1975); *Rubin v. United States,* 449 U.S. 424, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *Board of Trade of City of Chicago v. S.E.C.,* 677 F.2d at 1157 (holders of contract options to buy or sell GNMAs qualify as "purchasers" or "sellers"). For these reasons, it being true that a GNMA forward contract is simply a contract for the future sale of GNMA certificates, the court concludes that there was a purchase and sale of securities subject to the anti-fraud provisions of the securities laws.

■ Defendants also argue that the misrepresentations allegedly made by Zurek, particularly the one concerning the effect of interest rates on the value of GNMAs, are not actionable under either federal or state law because they amount to mere "puffing" or opinions based on historical facts. It is settled, however, that "predictions" or "forecasts," though purportedly based on historical fact, can constitute, in the appropriate circumstances, misrepresentations of material facts in violation of the federal securities laws. *See, e.g., Marx v. Computer Sciences Corporation,* 507 F.2d 485, 489 (9th Cir.1974). Similarly, although the general rule is that fraud cannot be predicated on predictions of future events, Illinois law has recognized that sometimes a false representation or opinion as to what will happen in the future, when made by one professing to have superior knowledge or experience, can support allegations of fraud. *See* I.L.P. *Fraud* §§ 8 and 9. Even though it is inappropriate on this 12(b)(6) motion to rule that statements made by defendant cannot, as a matter of law, be material misrepresentations, the court cautions plaintiff that he bears a heavy burden of persuasion with respect to the alleged misrepresentations in this case. He must prove that Zurek's statements were not reasonable or reasonably justified since a "reasoned and justified statement of opinion, one with a sound factual, historical basis, is not actionable." *Marx* 507 F.2d at 489, *quoting G & M, Inc. v. Newbern,* 488 F.2d 742, 745–46 (9th Cir. 1973). Moreover, plaintiff will have to es-

tablish that the alleged misrepresentations would have assumed actual significance in the deliberations of a reasonable shareholder. *See TSC Industries v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

■ Defendants' last argument based on federal law is that plaintiff has no private right of action pursuant to Section 17(a) of the 1933 Securities Act. In taking this position, defendants apparently ignore rulings by courts in this and other circuits that have repeatedly and consistently recognized a private right of action under § 17(a). *See, e.g., Lincoln National Bank v. Herber,* 604 F.2d 1038, 1040 n. 2 (7th Cir.1979); *Spatz v. Borenstein,* 513 F.Supp. 571, 576 (N.D.Ill.1981); *Stephenson v. Calpine Canifers II, Ltd.,* 652 F.2d 808, 815 (9th Cir.1981); *Kirshner v. United States,* 603 F.2d 234 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979). Therefore, the motion to dismiss Count II of the amended complaint on this ground is also denied.

### IV

■ Since the court has jurisdiction over the claims based on the federal securities laws, there is a basis for exercising pendent jurisdiction over the state claims contained in Counts IV through VII of the amended complaint. The two remaining objections raised by defendants relate solely to the claim brought in Count IV pursuant to the Illinois Securities Law of 1953, Ill.Rev.Stat. ch. 121½ §§ 137.12 and 137.14. Defendants argue that Count IV is fatally defective because plaintiff fails to allege that he tendered securities or a contract for the sale of securities to defendants or to the court as required by Section 137.13. This defense, however, cannot properly be evaluated by the court on a motion to dismiss plaintiff's complaint; it is in the nature of an affirmative defense which should be raised in defendants' responsive pleadings.

On the other hand, defendants' last objection is ripe and meritorious. In Count

**10**

IV, plaintiff alleges that defendants violated the Illinois antifraud provisions, Ill.Rev. Stat. ch. 121½, § 137.12 F, G, and I, but neglects to allege as he does in the federal securities laws counts, that they knowingly or deliberately made the misrepresentations. The Illinois Supreme Court recently ruled that scienter must be established to state a claim under Section 137.12(I), although Sections 137.12(F) and (G) have no comparable state of mind requirement. *People v. Whitlow*, 89 Ill.2d 322, 60 Ill.Dec. 587, 433 N.E.2d 629, *cert. denied*, 459 U.S. 830, 103 S.Ct. 68, 74 L.Ed.2d 68 (1982). Therefore, Count IV, to the extent it is predicated on Section 137.12(I), is stricken without prejudice.

### V

For the foregoing reasons, defendants' motion to dismiss the amended complaint is granted in part and denied in part. Whereas Count I is dismissed in its entirety and Count IV is partially dismissed, the court concludes that the other counts of the amended complaint, particularly those invoking the federal securities laws, present claims upon which relief may be granted.

So ordered.