Barry **FISHER**, Kenneth Fisher, Lloyd Berhoff, Marvin Kaufmann and Richard Goldstein, Plaintiffs,

v.

Howard B. **SAMUELS**; Eriador Drilling Partners, an Illinois partnership; Caliber Properties, Ltd., an Illinois corporation; and Jubilee Energy Corporation, a Texas corporation, Defendants.

No. 84 C 3385.

United States District Court, N.D. Illinois, E.D.

May 2, 1988.

On Motion for Reconsideration June 14, 1988.

predecessor to Section 13–215.

---

**8.** [Footnote by this Court] That reference is to Ill.Rev.Stat. ch. 83, ¶ 23, the identically-worded

James S. Montana, Jr., John A. Dienner, III, Pierce, Lydon, Griffin & Montana, Chicago, Ill., for plaintiffs.

Alan S. Rutkoff, Howard L. Kastel, McDermott, Will & Emery, Norman S. Lynn, Warren E. Silver, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

On October 3, 1984, the plaintiffs Barry Fisher, Kenneth Fisher, Lloyd Berhoff, Richard Goldstein, and Marvin Kaufman filed a twelve count amended complaint against the defendants Howard Samuels, Eriador Drilling Partners ("Eriador"), Caliber Properties, Ltd. ("Caliber"), and Jubilee Energy Corporation ("Jubilee").[1] The amended complaint alleges causes of action under the federal securities laws, RICO and state law. The defendants have moved for summary judgment on all counts. For the following reasons, the court grants the motion in part and denies it in part.

### I

### *Rule 56 Summary Judgment*

Summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is appropriate when the moving party uses the

> pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, [to] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). A material fact is one that "must be outcome determinative under the applicable law." *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (substantive law determines material facts); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). A genuine dispute about a material fact arises when "the evidence is such that a reasonable jury could return a verdict for that party." *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511.

After the movant has made a properly supported summary judgment motion, "the nonmovant does have the burden of setting forth specific facts showing the existence of a genuine issue of fact for trial." *Shlay v. Montgomery*, 802 F.2d 918, 920 (7th Cir. 1986). The nonmovant *may not* rely on the allegations or denials in its pleadings to establish a genuine issue of fact. *See* Fed. R.Civ.P. 56(e). Furthermore, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Finally, "the trial judge must accept as true the nonmovant's evidence, must draw all legitimate inferences in the nonmovant's favor, and must not weigh the evidence on the credibility of witnesses." *Valentine v. Joliet Township High School District*, 802 F.2d 981, 986 (7th Cir.1986).

### II

### *Factual Background*

The facts as alleged in the amended complaint are as follows. In late 1981, the defendant Samuels solicited the plaintiffs to invest in oil and gas production for the purpose of receiving current tax benefits as well as future income. Samuels, who was acting individually and as an agent of Caliber, made several representations that induced the plaintiffs to invest in Eriador. Specifically, Samuels represented "that the partnership funds would not be invested in a few wells but would be spread out among many." Amended Complaint at 4, ¶ 12. The defendants' prospectus further reinforced the above representation. The defendants also represented that Eriador's funds would only be invested in oil and gas wells in Texas and New Mexico. The plaintiffs relied on these representations when making their decisions to invest. Notwithstanding their representations, the defendants invested in only six wells, four of which were in Oklahoma. In addition, the defendants invested over eighty percent of

---

**1.** The plaintiffs Goldstein and Kaufman moved to voluntarily dismiss their actions on March 11, 1986. The court granted their motions for voluntary dismissal on July 24, 1986.

Eriador's funds in only two wells. Finally, the defendants provided the plaintiffs with untrue and deceptive reports during the course of the investment. These reports failed to reflect facts that were contrary to representations that the defendants had previously made to the plaintiffs.

■ General Rules 12(e) and (f) of the Northern District of Illinois provide further instructions for any party making or opposing a Rule 56 motion for summary judgment. General Rule 12(e) provides that the movant must file a statement of undisputed material facts with its motion. General Rule 12(f) states that the opposing party must file "a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated...." Failure to provide a Rule 12(f) statement will result in the admission of all of the material facts in the movant's Rule 12(e) statement. N.D.Ill.General R. 12(f); *See also ACC Chemical Co., Inc. v. Old Dutch Materials Co.*, 633 F.Supp. 703, 704 (N.D.Ill. 1986) (Shadur, J.). In this case, the defendants filed a Rule 12(e) statement and the plaintiffs neglected to file a Rule 12(f) statement. Consequently, the material facts set forth in the defendants' Rule 12(e) statement are deemed admitted.

The material facts as set forth in the defendants' Rule 12(e) statement are as follows:

1). Prior to making his investment, each plaintiff received an Eriador investment memorandum and a copy of the Eriador Limited Partnership Agreement. Amended Complaint at ¶ 14 & Exhibit A; Berhoff Deposition at 153; B. Fisher Deposition at 8–9, 19–20; K. Fisher Deposition at 76–77, 81–88.

2). Each plaintiff also signed an Eriador subscription agreement prior to investing in Eriador. By signing this agreement, each plaintiff represented that he had carefully read and understood the Eriador investment memorandum and partnership agreement, that no representations or warranties had been made to him other than those in the investment memorandum, that he was an experienced investor who was capable of evaluating Eriador and the risks associated with investments in the partnership, and that he understood that investments in Eriador were speculative and involved a high degree of risk. Defendants' Deposition Exhibits 4, 8, 15.

3). At the time of investment, each plaintiff knew that Eriador could invest in wells located anywhere in the United States. Each plaintiff also knew that the number of wells that Eriador would invest in was uncertain and would depend on, *inter alia*, the amount of money raised by Eriador. Amended Complaint at Exhibit A at 17.

4). At the time of investment each plaintiff also knew that Eriador's general partners had complete discretion with respect to Eriador's business activities. Amended Complaint at Exhibit A.

5). The defendants made no representations to the plaintiffs Lloyd Berhoff and Kenneth Fisher with respect to the number of wells that Eriador would drill. Berhoff Deposition at 158; K. Fisher Deposition at 30, 39, 75–78, 85–88.

6). The defendant Samuels dealt with the plaintiffs at "arms length" and never acted or served as an investment advisor to any plaintiff. Berhoff Deposition at 118; B. Fisher Deposition at 18; K. Fisher Deposition at 61.

7). Each plaintiff received written status reports concerning Eriador on or around the following dates: January 12, 1982, February 8, 1982, April 13, 1982, May 24, 1982, June 10, 1982, July 19, 1982, September 10, 1982, October 29, 1982, November 2, 1982, January 6, 1983, February 22, 1983, and March 25, 1983. Samuel's Declaration at ¶¶ 2–14 & Exhibits A–M.

8). By February, 1982, each plaintiff knew or had constructive knowledge that Eriador had invested in a total of six wells, four of which were in Oklahoma. Samuels Declaration at Exhibit A and B.

9). In early March, 1982, each plaintiff received an audited financial statement

for Eriador for the year ending December 31, 1981.

Samuels Declaration at ¶ 15 and Exhibit O.

10). By March, 1983, each plaintiff knew or had constructive knowledge of the total amount of funds raised by Eriador and that all or substantially all of these funds had been spent.

Samuels Declaration at Exhibit O.

11). The plaintiff Berhoff would not have invested in Eriador had he known that the partnership contemplated drilling activities in Oklahoma. Berhoff raised questions with respect to the status of his investment in Eriador at or shortly after the time that he obtained knowledge that the partnership had conducted drilling activities in Oklahoma. Berhoff did not receive satisfactory responses from the defendants after he raised the above questions.

Berhoff Deposition at 99, 161, 192.

12). The plaintiff Barry Fisher believed that Eriador was conducting operations in a manner that was inconsistent with the proposed activities of the partnership as described in the investment memorandum when he learned that the partnership was conducting drilling activities in Oklahoma. The drilling in Oklahoma caused Fisher to raise questions and concerns with respect to his investment in Eriador.

B. Fisher Deposition at 71–73.

13). Prior to February, 1982, the plaintiff Kenneth Fisher suspected something was amiss with respect to his Eriador investment. In addition, both Fishers confronted Samuels with what they believed to be the falsity of pre-investment representations that were made to them concerning the number of wells that the partnership would invest in.

K. Fisher Deposition at 30–31.

14). On or about October 7, 1982, each plaintiff received a status report that, *inter alia*, stated that Eriador had invested in six wells and that more than eighty percent of the partnership's funds had been invested in two wells. This report also identified the percentage of Eriador's interest in each of the six wells.

Samuels Deposition at ¶ 16 and Exhibit P; Defendants' Deposition Exhibit 11.

15). None of the plaintiffs demanded recission of his investment in Eriador in a manner that satisfied the requirements of section 13 B of the Illinois Securities Act of 1953, Ill.Rev.Stat. ch. 121½ § 137.13 A, until November, 1983.

Amended Complaint at ¶ 45.

16). This action was filed in April, 1984. Amended Complaint.[2]

### III

#### Federal Securities Act

■ The plaintiffs allege a cause of action under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 of the Securities and Exchange Commission promulgated pursuant to the 1934 Act, 17 C.F.R. § 240.10b–5 in Count I of their amended complaint; a cause of action under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2) in Count II; a cause of action under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) in Count III; and a cause of action for aiding and abetting the violation of the above statutes in Count IV. The defendants move for summary judgment on these counts on the grounds that the claimed misrepresentations, which were nothing "more than vague statements of present plans and intentions that the partnership was not able to satisfy," are not actionable unless there is proof that they were false when they were made. Defendants' Memo in Support at 9. The federal claims are insufficient because the plaintiffs have presented no proof that these statements were false when they were made.

It is true that "expressions of opinion and promises or predictions of future fact ordinarily cannot ground fraud charges." *SFM Corp. v. Sundstrand Corp.*, 99 F.R.

---

**2.** The court notes that the various legal conclusions that were included within the defendants' Rule 12(e) statement are *not* deemed to be admitted.

D. 101, 105 (N.D.Ill.1983) (Shadur, J.). However, it is also settled "that 'predictions' or 'forecasts,' though purportedly based on historical fact, can constitute in the appropriate circumstances, misrepresentations of material facts in violation of the federal securities laws." *Abrams v. Oppenheimer Government Securities, Inc.*, 589 F.Supp. 4, 9 (N.D.Ill.1983) (Leighton, J.), *aff'd*, 737 F.2d 582 (7th Cir.1984); *See also Marx v. Computer Science Corp.*, 507 F.2d 485, 489 (9th Cir.1974). For example, "[o]pinions or predictions not made in good faith or made with the knowledge that they are not based upon a sound, factual or historical basis are actionable under section 10(b) and rule 10(b)–5." *Alfaro v. E.F. Hutton & Co.*, 606 F.Supp. 1100, 1104 (E.D.Pa.1985); *McLean v. Alexander*, 599 F.2d 1190, 1198 (3d Cir.1979); *United States v. MacKay*, 491 F.2d 616, 623 (10th Cir.1973), *cert. denied*, 416 U.S. 972, 94 S.Ct. 1996, 40 L.Ed.2d 560 (1974) (statements made recklessly without a reasonable basis are actionable); *Cf. In Re Warner Communications Securities Litigation*, 618 F.Supp. 735, 742 (S.D.N.Y. 1985); *aff'd*, 798 F.2d 35 (2d Cir.1986) (predictions are not actionable if supported by a reasonable basis).

Finally, "making a specific promise to perform a particular act in the future while secretly intending not to perform the act may violate section 10(b) where the promise is part of the consideration for the transfer of securities." *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986); *Nevitsky v. Manufacturers Hanover Brokerage Services*, 654 F.Supp. 116, 119 (S.D.N.Y.1987); A. Jacobs, *Litigation and Practice Under Rule 10b–5*, § 61.01[c][iii] at 3–66, 3–67 (2d ed. 1985) ("a person expressing an opinion must hold the opinion, one predicting an event has to think the prediction will come true, a promisor must intend to perform his promise ..."). *See generally McGrath v. Zenith Radio Corp.*, 651 F.2d 458, 466 (7th Cir.), *cert. denied*, 454 U.S. 835, 102 S.Ct. 136, 70 L.Ed.2d 114 (1981).

[redacted] The plaintiffs must prove that the representations in question either were not reasonable or reasonably justified when they were made or that the defendants made the representations with no intention of following through on them. *Abrams*, 589 F.Supp. at 9. Questions of reasonableness and intent involve factual determinations and are generally inappropriate for resolution on a motion for summary judgment. *See Foster v. Zeeko*, 540 F.2d 1310, 1319 (7th Cir.1976); *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir.1976); *See also Litigation and Practice*, § 61.01[c][iii] at 3–67 ("Intent cannot be proved by psychoanalysis. It is a question of fact to be determined by evaluations of external occurrences.") The resolution of these issues necessarily depends upon inferences to be drawn from all the facts and circumstances of the case. The plaintiffs contend that Samuels represented that the partnership would "drill between 112 and 115" wells. B. Fisher Deposition at 21. Samuels also stated that drilling a large number of wells would reduce the risk. B. Fisher Deposition at 99. Barry Fisher shared this information with his brother Kenneth. K. Fisher Deposition at 30. Samuels' representations as to the number of wells that would be drilled induced the Fishers to invest in Eriador rather than in other ventures that proposed to drill between nine and fifteen wells each. *Id.* at 39. After talking with Samuels, Berhoff stated that he was under the impression that substantially more than six wells would be drilled. L. Berhoff Deposition at 158–59. Berhoff also stated that he would not have invested in Eriador had he known that less than ten wells would be drilled. *Id.* at 159.

Notwithstanding the above representations, the Eriador limited partnership drilled only six wells. The plaintiffs present no direct proof showing that the defendants intended to drill a small number of wells at the time Samuels made his representation. However, the plaintiffs do present facts from which a reasonable jury could *infer* that Samuels' prediction was not reasonably justified or that Samuels knew that the partnership would drill no more than a handful of wells. For example, Eriador funds were invested in only six wells, with over eighty percent of these funds concentrated in two of the wells.

Moreover, Samuels knew, contrary to representations that he had made to Berhoff, that the plaintiffs' funds, which totalled $215,000, were the only moneys actually invested in Eriador.[3] Amended Complaint at 5, ¶ 19. A jury could reasonably infer that these funds were wholly insufficient to drill the 112 to 115 wells that Samuels stated that Eriador would drill. Samuels' prediction, therefore, was not reasonably based in fact. Given this, his prediction as to the number of wells that would be drilled is actionable under the federal securities law.[4] Accordingly, the defendants' motion for summary judgment on these grounds is denied.

## IV

### RICO

The plaintiffs allege violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, in Counts VI, VII, and VIII of their amended complaint. The defendants move for summary judgment on these counts on the grounds that the plaintiffs have not adequately pled or proven a "pattern of racketeering activity" as required by the RICO statute. *See* 18 U.S.C. § 1962; *See Elliott v. Chicago Motor Club Insurance,* 809 F.2d 347, 349 (7th Cir.1986). As the Seventh Circuit has held that although "[a] pattern of racketeering activities requires at the barest minimum two 'acts of racketeering activity,' ... much more than two such acts must be shown in order to demonstrate a pattern." *Lipin Enterprises, Inc. v. Lee,* 803 F.2d 322, 323 (7th Cir.1986), *quoting* 18 U.S.C. § 1961(5); *See also Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). The "racketeering activities involved must reveal some 'continui-ty'—i.e., activities continuing over time or in different places—as well as some 'relationship' among activities—i.e. activities adding up to coordinated actions." *Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806, 810 (7th Cir.1987); *See also Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 818 (7th Cir.1987) ("a 'pattern' of racketeering ... means predicate acts sufficiently separate in time that they may be viewed as separate transactions."); *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir. 1986).

The decision as to whether certain actions constitute a pattern of racketeering activity "depends on the facts and circumstances of the particular case, with no one factor being determinative." *Morgan,* 804 F.2d at 975. Relevant considerations include "[t]he number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries...." *Id.; Elliot,* 809 F.2d at 350. In this case, the plaintiffs argue that the defendants engaged in a scheme to defraud them by first fraudulently inducing them to invest in Eriador. The defendants later used oral and written reports to "lull" the plaintiffs into a state of complacency thereby forestalling any investigation into the facts. The plaintiffs identified the nineteen status reports that they received from the defendants as mail fraud violations. The negotiations preceding the plaintiffs' investment occurred during a period of several weeks in late 1981. The status reports were sent between 1982 and March, 1984. Finally, a total of five victims, the original plaintiffs, were defrauded.

▮ The plaintiff's evidence is insufficient to establish a pattern of racketeering.

---

3. Samuels at one point told Berhoff that between $975,000 and $1,500,000 was to be raised by Eriador. Berhoff Deposition at 159–60. Samuels also told Berhoff that Eriador had raised over $900,000 *prior* to the time when the plaintiffs invested. *Id.* at 176.

4. The defendants cited *Grossman, Faber & Miller, P.A. v. Cable Funding Corp.,* [1974–75] Fed. Sec.L.Rep. (CCH) ¶ 94,913 (D.Del.1974) in support of their position. *Grossman* is inapplicable to the circumstances of this case. In *Grossman,* the court held that the defendant was not liable for fraud where statements of intended business activities were truthful when made but later became unwise or unfeasible due to the passage of time. *Id.* at 97,117. Unlike here, the plaintiff in *Grossman* made no allegations that the statements of future plans were made without any intention of carrying them out. *Id.* at 97,117 n. 1.

As a preliminary matter, the nineteen status reports received after the plaintiffs were allegedly defrauded by investing in Eriador cannot, as a matter of law, be considered when determining whether a pattern of racketeering existed. To "establish a RICO violation, the mailings must be in furtherance of the purportedly fraudulent scheme." *Spiegel v. Continental Illinois National Bank,* 790 F.2d 638, 649 (7th Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). A mailing will only be in furtherance of a scheme if it is " 'incidental to an essential part of the scheme....' " *United States v. Wormick,* 709 F.2d 454, 462 (7th Cir.1983), *quoting United States v. Rauhoff,* 525 F.2d 1170, 1176 (7th Cir.1975). In addition, " 'mailings made *after* the scheme has reached fruition are *not* in furtherance of the scheme.' " (emphasis added). *Id.; Spiegel,* 790 F.2d at 649. After eliminating the status reports from consideration, the facts establish that the defendants' mailings and other unspecified predicate acts, which occurred over a several week period in late 1981, resulted in five victims suffering one collective injury. *See Elliott,* 809 F.2d at 350 (when multiple victims sustain an injury from one incident, their injuries are not distinct).

In *Lipin,* the Seventh Circuit "held that multiple fraudulent representations ... did not constitute a 'pattern' of fraudulent representations where the acts (1) occurred within a short period of time, (2) were related to a single transaction ..., (3) involved a single victim, and (4) inflicted a single injury." *Medical Emergency Service Associates, S.C. v. Foulke,* 844 F.2d 391, 394 (7th Cir.1988); *See also Tellis v. United States Fidelity & Guaranty Co.,* 826 F.2d 477, 478 (7th Cir.1986); *Skycom,* 813 F.2d at 818; *Marks v. Pannell Kerr Forster,* 811 F.2d 1108, 1118 (7th Cir.1987). This case differs from those cited above because multiple victims were involved. However, this factor is not determinative. *Morgan,* 804 F.2d at 975. Moreover, the plaintiffs have presented no evidence to demonstrate that the mailings and other unspecified predicate acts which preceded their investment in Eriador were sufficient-

ly separate in time to be viewed as separate transactions. These multiple mailings, which were necessitated by the complexity of raising money from numerous investors, were all directed toward the same end. Namely, inducing the plaintiffs to invest in Eriador. "An isolated episode of fraud does not a pattern make." *Tellis,* 826 F.2d at 479. Consequently, the court will grant the defendants' summary judgment motion as to Counts VI, VII, and VIII because the plaintiffs have failed to establish facts from which a reasonable jury could find the existence of a pattern of racketeering. *See* Fed.R.Civ.P. 56(d).

V

*Section 12(2) of the 1933 Securities Act*

The defendants contend that Count II, which is brought pursuant to section 12(2) of the Securities Act of 1933, is barred by the applicable statute of limitations. The applicable statute of limitations is provided by section 13 of the Act, 15 U.S.C. § 77m. Section 13 provides that a section 12(2) claim must "be brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. The plaintiffs must affirmatively plead compliance with section 13. *See Ambling v. Blackstone Cattle Co., Inc.,* 658 F.Supp. 1459, 1462 (N.D.Ill.1987) (Bua, J.); *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736, 748–49 (N.D.Ill. 1981). As the Seventh Circuit stated, "the time to file suit begins to run when the investor either knows or in the exercise of reasonable diligence could have discovered the facts on which the suit is based." *Norris v. Wirtz,* 818 F.2d 1329, 1334 (7th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987); *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 539–40 (N.D.Ill.1981) (Bua, J.). An objective standard is used to test reasonable diligence and the issue may be resolved by summary judgment "when uncontroverted evidence irrefutably demonstrates plaintiff discovered the fraudulent conduct." *Kramas v. Security Gas & Oil,*

Inc., 672 F.2d 766, 770 (8th Cir.1982), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982).

■ The plaintiffs in this case have failed to point to evidence in the record from which a reasonable juror could find that they filed their section 12(2) claim within the one year limitations period. The evidence establishes that the plaintiffs knew or should have known through the exercise of due diligence that (1) Eriador would only drill six wells, (2) that their funds were the only ones invested in Eriador, (3) that Eriador had drilled four wells in Oklahoma rather than in Texas or New Mexico and (4) that over eighty percent of the funds had been invested in only two wells, well in advance of a year before this suit was filed. *See* Listing of Established Facts, *supra* at 5–8. These facts form the basis of the plaintiffs' allegations.

■ The plaintiffs advance two additional arguments in their attempt to avoid the bar of the statute of limitations. First, the plaintiffs argue that the defendants acted as their agents when they placed the plaintiff's funds into the program and agree to conduct oversight of the program. The defendants, as agents, owed a fiduciary duty to the plaintiffs. The defendants' fiduciary duty, according to the plaintiffs, relieved the plaintiffs of any duty to act with due diligence. Consequently, the statute of limitations did not begin to run until the plaintiffs actively discovered the fraud. The plaintiffs also argue that the defendants engaged in post-fraud acts designed to lull the plaintiffs into inactivity. These continuing omissions and misrepresentations tolled the statute of limitations until the plaintiffs actually discovered the fraud when they learned in late 1983 that their letters of credit were to be called.

These arguments are untenable. To invoke the doctrine of fraudulent concealment, "the plaintiff must have remained ignorant of the fraud 'without any fault or want of diligence of care on his part.' " *Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir. 1974), *quoting Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874). The plaintiff *cannot* "ignore obvious danger signals ... [and] [t]here is 'no license to ignore events giving rise to strong suspicion.' " *Teamsters Local 282 Pension Trust Fund v. Angelos*, 624 F.Supp. 959, 964 (N.D.Ill.1985) (Shadur, J.), *aff'd.* 815 F.2d 452 (7th Cir.1987), *quoting McCarthy v. Paine Webber, Inc.*, 618 F.Supp. 933, 937 (N.D.Ill.1985) (Shadur, J.); *See also Hupp*, 500 F.2d at 996 (the statute is not tolled while the plaintiff leisurely discovers the full details of the scheme). Moreover, "the time starts to run immediately ... [w]hen the defendant lies and the other party does not reasonably investigate." *Norris*, 818 F.2d at 1334. The plaintiffs, as they concede, had sufficient knowledge of the facts to pique their suspicions more than one year before this suit was brought. *See, e.g.*, B. Fisher Deposition at 71–73. Finally, even assuming that the defendants acted as the plaintiffs' agents, the mere "existence of a fiduciary relationship" does not allow the plaintiffs to ignore the facts giving rise to their suspicion. *See McCarthy*, 618 F.Supp. at 937; *Hupp*, 500 F.2d at 997. The plaintiffs have failed to establish that they exercised due diligence after they gained knowlege of facts that prompted their suspicion. Therefore, the doctrine of fraudulent concealment is inapplicable. Accordingly, the court grants the defendants' motion for summary judgment as to Count II of the amended complaint.[5]

## VI

### State Law Claims

■ The defendants move for summary judgment on the plaintiffs' state law claims on several grounds. First, the defendants contend that all of the state law claims predicated on fraud must fail because the

---

5. The defendants also moved for summary judgment on the grounds that the plaintiffs' RICO claims are barred by the applicable statute of limitations. The defendants subsequently apprised the court of the Supreme Court's decision in *Agency Holding Corp. v. Malley–Duff & Asso-* *ciates, Inc.*, ⸺ U.S. ⸺, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). This decision forecloses the defendants' summary judgment motion on the above grounds. The court appreciates the defendants' candor and conscientiousness.

alleged misrepresentations are not actionable. This argument is rejected for the reasons stated in section III of the court's opinion. Secondly, the defendants contend that Counts X and XI, which allege causes of action for breaches of fiduciary duty and contract, must fail because the defendants owe *no* obligations to the plaintiffs as individuals. This argument too must fail. The plaintiffs, as all parties acknowledge, became limited partners in Eriador when they invested. The defendants Samuels, Jubilee, and Caliber are general partners of Eriador. Amended Complaint, Exhibit A at 1, 35. Under Illinois law, "as a general rule a fiduciary relationship exists *between* partners." *Nelson v. Warnke,* 122 Ill.App. 3d 381, 383, 77 Ill.Dec. 900, 901, 461 N.E.2d 523, 524 (1st Dist.1984) (emphasis added); *See also Peskin v. Deutsh,* 134 Ill.App.3d 48, 53, 89 Ill.Dec. 28, 32, 479 N.E.2d 1034, 1038 (1st Dist.1985). The fiduciary duty between the partners embraces "all matters relating to the partnership business ... [and] each (partner) was bound to exercise the utmost good faith and honesty in all dealings and transactions relating to the partnership." *Couri v. Couri,* 95 Ill.2d 91, 98, 69 Ill.Dec. 117, 120, 447 N.E.2d 334, 337 (Ill.1983). Accordingly, the Eriador limited partnership agreement establishes a fiduciary relationship *between* the defendants and the plaintiffs. Thus, the defendants' motion for summary judgment on these claims must fail.

▇ The defendants also move for summary judgment on Count V which alleges a cause of action under sections 12(E), (F), (G), and (I) of the Illinois Securities Law of 1953, *as amended,* Ill.Rev.Stat. ch. 121½, ¶ 137.12(E), (F), (G), (I) (1981). Section 13(A) of the Act, the civil remedies provision, allows any purchaser of securities to rescind a purchase made in violation of the law. Ill.Rev.Stat. ch. 121½, ¶ 137.13(A). However, the purchaser must give notice of his election to rescind the purchase within six months after having knowledge that the sale is voidable. Ill.Rev.Stat. ch. 121½, ¶ 137.13(B). The defendants argue that the plaintiffs' claim is barred because they did not give notice under the Act until November, 1983. This date was more than a year

after they knew the facts that their claims are based on. The plaintiffs argue, on the other hand, that the six month period does not begin to run until the purchaser learns that the sale is voidable. Simply having knowledge of the facts constituting the claim is not enough to trigger the limitations period.

The plaintiffs position is supported by Illinois law. The "Illinois courts have held that even though an investor might know of facts that would void his security purchase, it is only when he learns, possibly from his attorney, that those facts might have such a legal consequence that the statutory six month period begins to run." *Hidell v. International Diversified Investments,* 520 F.2d 529, 539 (7th Cir.1975); *See also Buell v. Dayson,* 127 Ill.App.3d 958, 964, 82 Ill.Dec. 869, 874, 469 N.E.2d 403, 408 (5th Dist.1984) ("knowledge that a sale of securities is voidable is a mixed question of law and fact on which a layman is entitled to acquire his first knowledge from an attorney...."). The plaintiffs sought advise from counsel knowledgeable in securities matters after they learned that their letters of credit might be called on August 18, 1983. B. Fisher Deposition at 63, 66. The plaintiffs sent notice in November, 1983 which was timely and within the Act's six month limitation period. Consequently, the defendants' motion for summary judgment on Count V is denied.

▇ Finally, the defendants move for summary judgment on Count XII, which alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 262 (1981). The defendants argue that the plaintiffs' claim should fail because they have failed to prove a "public injury." The Illinois Supreme Court has yet to decide whether a "public injury" must be proven to recover under the Act and the state's appellate courts along with courts in this district are split on this question. *See Maduff v. Life Insurance Co. of Virginia,* 657 F.Supp. 437, 440 (N.D.Ill.1987) (and cases cited within). It is unnecessary to decide this issue to resolve the defendants' summary

judgment motion. The courts have "noted that certain practices may be presumed to injure the public in which case, a specific allegation of public harm would be unnecessary." *Heinold Commodities, Inc. v. McCarty*, 513 F.Supp. 311, 312 (N.D.Ill. 1979); *Evanston Motor Co., Inc. v. Mid-Southern Toyota Distributors, Inc.*, 436 F.Supp. 1370, 1374 n. 6 (N.D.Ill.1977). For example, "a violation of § 10(b) of the Securities Exchange Act 'can be presumed to have injured the public,' and therefore states a cause of action under [the Illinois Consumer] Fraud Act." *Horsell Graphic Industries, Ltd. v. Valuation Counselors, Inc.*, 639 F.Supp. 1117, 1122 (N.D.Ill.1986) (Moran, J.), *quoting Campbell v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, [1984–1985 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 92,082 at 91,415–91,416 (N.D. Ill.1985) (Holderman, J.) [available on WESTLAW, 1985 WL 1799]. The plaintiffs' section 10(b) claim has survived the defendants' summary judgment motion. Thus, a public injury is presumed in this case regardless of whether it is actually required to state a cause of action under the Act. Consequently, the plaintiffs' cause of action is sufficient to state a cause of action under the Act. Accordingly, the defendants' motion for summary judgment as to Count XII is denied.

### Conclusion

For the foregoing reasons, the court grants the defendants' summary judgment motion as to Counts II, VI, VII, and VIII. The court denies the defendants' summary judgment motion as to Counts I, III, IV, V, IX, X, XI, and XII.

## ON MOTION FOR RECONSIDERATION

On May 2, 1988, this court granted the defendants' summary judgment as to Counts II, VI, VII, and VIII of the plaintiff's amended complaint. On May 13, 1988, the plaintiffs' filed this motion for reconsideration concerning Counts VI, VII, and VIII which allege violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). For the following reasons, the plaintiffs' motion is denied.

### I

### *Motion for Reconsideration*

■ The plaintiffs' motion for reconsideration is denied on procedural and substantive grounds. Motions for reconsideration are neither cognizable under the Federal Rules of Civil Procedure nor authorized by the local rules of this District. *F/H Industries, Inc. v. National Union Fire Insurance Co.*, 116 F.R.D. 224, 225 (N.D.Ill.1987) (Aspen, J.). Although motions to reconsider are appropriate in rare circumstances, no such circumstances are present in this case. *See, e.g., National Union Fire Insurance Co. v. Continental Illinois Corp.*, 116 F.R.D. 252, 253 (N.D.Ill. 1987) (Shadur, J.); *Above The Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983). The plaintiffs are simply advancing an argument which this court has already rejected. This is inappropriate. *See National Union*, 116 F.R.D. at 253. A litigant wishing to alter, amend, or vacate a judgment must make an appropriate motion within *ten* days of the judgment pursuant to Federal Rule of Civil Procedure 59(e). The plaintiffs' motion is untimely under Rule 59(e). Consequently, the plaintiffs' motion is denied on these grounds.

The plaintiffs' motion also lacks substantive merit. The court dismissed the plaintiffs' RICO counts for failing to establish the requisite pattern of racketeering. *See* pg. 70–71. The plaintiffs challenge the court's refusal to consider the defendants' written status reports when determining whether a pattern of racketeering was established. The Seventh Circuit explicitly held that mailings made *after* a scheme has reached fruition are *not* in furtherance of the scheme in *Spiegel v. Continental Illinois National Bank*, 790 F.2d 638, 649 (7th Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). *See also United States v. Wormick*, 709 F.2d 454, 462 (7th Cir.1983). Even assuming that mailings made after a scheme reaches fruition can under some circumstances be in fur-

·therance of a scheme,[1] the undisputed facts indicate that such circumstances are not present in this case.

The plaintiff brought their fraud claims alleging that the defendants made numerous misrepresentations concerning, among other things, the number of wells that the limited partnership would drill, the location of the wells, and the total amount of funds that would be raised for the project. The plaintiffs *alleged* that the defendants' status reports lulled the plaintiffs into a state of complacency thereby forestalling any investigation into the facts. The undisputed facts, to the contrary, establish that the status reports *informed* the plaintiffs of the facts constituting the heart of their fraud claims. *See Fisher*, at 67–68. Far from "lulling" the plaintiffs, these status reports should have "jolted" them into action. The plaintiffs concede that they took some action after receiving adverse information from the status reports. *See* Plaintiffs' Memorandum in Opposition, at 23–24. As in *Spiegal*, these status reports made it *more*, rather than *less*, likely that the fraud would be uncovered. *Spiegal*, 790 F.2d at 649. Therefore, the mailing of these status reports was not in furtherance of the scheme to defraud the plaintiffs. The court further notes that the fact that multiple victims were involved does not automatically establish the existence of a pattern of racketeering. *See, e.g., Jones v. Lampe*, 845 F.2d 755, 757 (7th Cir.1988) (no factor, including the number of victims, is controlling standing alone); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986); *Design Time, Inc. v. Synthetic Diamond Technology, Inc.*, 674 F.Supp. 1564, 1577–78 (N.D.Ind.1987); *Latigo Ventures v. Laventhol & Horwath*, No. 85 C 9584, slip op. at 12–13 (N.D.Ill. May 21, 1987) (Duff, J.) [available on WESTLAW, 1987 WL 4851].

Finally, the plaintiffs' attempt to buttress their effort to establish a "pattern of racketeering" by stubbornly insisting that there were five separate schemes to defraud which caused the victims to suffer five distinct injuries. These contentions are absolutely without merit. As in *Jones*, there is only *one* transaction involved in this case. The transaction occurred when the defendants induced the plaintiffs to invest in Eriador. The attempt to characterize the defendants' efforts to induce *each* plaintiff to invest as a separate scheme is unsuccessful because the facts support only one scheme. *Cf. Jones*, at 758. Furthermore, there was only one distinct injury suffered. *See Fisher*, at 71 (and cases cited within). Consequently, the facts of this case fail to establish the requisite pattern of racketeering. Accordingly, the court denies the plaintiffs' motion for reconsideration for all of the above reasons.

### Conclusion

The plaintiffs' motion for reconsideration is denied.

---

**1.** The Seventh Circuit's decision in *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 754 (7th Cir.1988) cast further doubt on the viability of this proposition.